James E. Cecchi
John M. Agnello
Lindsey H. Taylor
Donald A. Ecklund
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Mark C. Gardy
James S. Notis
GARDY & NOTIS, LLP
560 Sylvan Avenue, Suite 3085
Englewood Cliffs, New Jersey 07632
(201) 567-7377

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL ANSFIELD, on behalf of himself and all others similarly situated, | Civil Action No. |
| Plaintiff, | |
| vs. | **CLASS ACTION COMPLAINT and DEMAND FOR JURY TRIAL** |
| THE HERTZ CORPORATION, HERTZ GLOBAL HOLDINGS, MARK P. FRISSORA, THOMAS C. KENNEDY, and ELYSE DOUGLAS, | |
| Defendants. | |

*It took some time, but becoming accustomed to having a high-level focus and relinquishing the need to know all of the details proved to be the biggest adjustment for me.*

Elyse Douglas, former Senior Executive Vice President and Chief Financial Officer of <u>The Hertz Corporation, describing the leap from treasurer to CFO on July 24, 2012</u>

*There's clearly something deeper going on…We have no idea what we're dealing with here, no idea what this company's financial condition is, what the past level of profitability is, and no basis on which to judge what its future profitability may be.*

Maryann Keller, an auto-industry consultant and former director of Dollar Thrifty <u>Automotive Group, describing The Hertz Corporation's Form 8-K on June 6, 2014</u>

Plaintiff Paul Ansfield ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Hertz Global Holdings and The Hertz Corporation (collectively referred to herein as "Hertz" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and reports issued by and disseminated by Hertz; and (c) review of other publicly available information concerning Hertz.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a class action on behalf of purchasers of Hertz securities between February 22, 2012 and June 6, 2014, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") against the

defendants Hertz, Mark P. Frissora, Thomas C. Kennedy, and Elyse Douglas (collectively the "Defendants").

2.      Hertz is one of the nation's largest automobile and equipment rental companies.   Throughout the Class Period, Hertz was headquartered in Park Ridge, New Jersey.

3.      The Company's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "HTZ".  As of March 31, 2014, the Company had more than 447 million shares issued and outstanding.

4.      On June 6, 2014, the Company issued a press release and filed a Current Report with the SEC on Form 8-K announcing that the Audit Committee of the Company's Board of Directors had determined that the Company's financial statements filed with the SEC on Form 10-K for the fiscal year ended December 31, 2013 should no longer be relied upon.  According to the Company, during the preparation of the First Quarter 10-Q for the period ended March 31, 2014 "errors were identified relating to Hertz's conclusions regarding the capitalization and timing of depreciation of certain non-fleet assets, allowances for doubtful accounts in Brazil, as well as other items."   Hertz continued its review and recently identified additional errors related to allowances for uncollectible amounts with respect to renter obligations for damaged vehicles and restoration obligations at the end of facility leases.

5.      The Audit Committee of the Board of Directors has consulted with management, analyzed the adjustments, and has concluded that the 2011 financial statements previously disseminated to the investing public should no longer be relied upon, and Hertz must restate them.  Hertz also needs to correct the 2012 and 2013 financial

statements to reflect these errors.  In addition, the Audit Committee has warned of the possibility of further material adjustments to the financial records for fiscal years 2011, 2012, and 2013, individually or in the aggregate.  The Company further announced that it intends to amend its Form 10-Q for the period ended March 31, 2014 and its 10-K for the year ended December 31, 2013.

6.     On this news, shares of Hertz declined 9.1% to close on June 6, 2014 at $27.73 per share, for the biggest one-day drop in more than six months.

7.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (i) that the Company had accounting errors; (ii) that, as a result, the Company's revenue and financial results were overstated; (iii) that, as such, the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (iv) that the Company lacked adequate internal and financial controls; and (v) that, as a result of the foregoing, the Company's financial statements from 2011 through June 6, 2014 were materially false and misleading at all relevant times.

8.     As a result of Defendants' wrongful acts, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C.§§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

11.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this District.  Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this District.  Additionally, Hertz's maintains executive offices within this District.

12.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.    As set forth in the accompanying certification, incorporated by reference herein, Plaintiff Paul Ansfield purchased Hertz common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant The Hertz Corporation is a Delaware corporation with its principal executive offices at the time of the issuance of the Form 10-K for the period ended December 31, 2013 located at 225 Brae Boulevard, Park Ridge, New Jersey.

15.     Defendant Hertz Global Holdings is a Delaware corporation with its principal executive offices located at 999 Vanderbilt Beach Road, Naples, Florida.

16.     Defendant Mark P. Frissora ("Frissora") is, and was throughout the Class Period, the Chief Executive Officer ("CEO"), a director of Hertz and Chairman of its Board of Directors (the "Board").

17.     Defendant Thomas C. Kennedy ("Kennedy") serves as Senior Executive Vice President and Chief Financial Officer of Hertz and has served in this capacity since December 9, 2013.

18.     Defendant Elyse Douglas ("Douglas") served as Senior Executive Vice President and Chief Financial Officer of Hertz from the beginning of the Class Period through and including October 1, 2013, when she resigned.

19.     Defendants Frissora, Kennedy, and Douglas are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Hertz's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.,* the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that

the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

20.    Hertz, through its subsidiaries, engages in the car and equipment rental business worldwide.  Hertz is one of the largest U.S. car rental companies by sales.  The Company operates in two segments, Car Rental and Equipment Rental.  Hertz also provides fleet leasing and management services and offers claims administration services, such as investigating, evaluating, negotiating, and disposing of various claims, including third-party, first-party, bodily injury, property damage, general liability, and product liability.

21.    The Car Rental segment rents and leases various car models on an hourly, daily, weekend, weekly, monthly, or multi-month basis.  This segment operates car rental locations at or near airports, as well as in central business districts and suburban areas of cities in North America, Europe, Australia, Latin and South America, China, and New Zealand.

22.    The Equipment Rental segment rents earthmoving equipment, material handling equipment, aerial and electrical equipment, air compressors, generators, pumps, small tools, compaction equipment, and construction-related trucks.  This segment also sells new equipment, and consumables, such as gloves and hardhats.

### Materially False and Misleading
### <u>Statements Issued During the Class Period</u>

23.     The Class Period begins on February 22, 2012.  On this day, the Company announced its financial results for Fourth Quarter and Fiscal 2011.  The press release, entitled "Hertz Sets Financial Records for Fourth Quarter and Full Year," emphasized the Company's purportedly "record" results in the titled and stated, in pertinent part that the Company had enjoyed "record fourth quarter adjusted pre-tax margin of 8.2%, and record adjusted pre-tax income of $165.1 million, 136.5% higher year-over-year ("YOY").

24.     The release also quoted Defendant Frissora stating, in pertinent part, that the Company had enjoyed "record" results for the fourth quarter and full year 2011.

25.     As to the "Outlook" for fiscal 2012, the release forecasted strong growth.

26.     The price of Hertz common stock increased on these positive statements.

27.     On February 25, 2012, these results were filed in the Company's Form 10-K for the period ended December 31, 2011.

28.     The Company's Form 10-K was signed by Defendants Frissora and Douglas, among others, and reaffirmed the Company's previously announced financial results in its Form 10-Q for the four quarters of 2011.

29.     On February 25, 2013, once again, before the opening of trading, Hertz issued a press release announcing its financial results for fourth quarter and fiscal 2012, the quarter ended December 31, 2012, and Hertz's fiscal 2013 guidance.  The press release, again, entitled "Hertz Sets Financial Records for Fourth Quarter and Full Year," emphasized the Company's purportedly "record" results in the title and stated, in pertinent part, that the Company had enjoyed "record" worldwide revenues for the fourth quarter and full year

2012, up 15.1% and 8.7% YOY, and "record" adjusted pre-tax income of $213.5 million, 29.3% higher YOY.

30.     The release also quoted Defendant Frissora stating, in pertinent part, "that Hertz once again delivered record fourth quarter and full year financial performance."

31.     As to the "Outlook" for fiscal 2013, the release forecasted strong growth and Defendant Frissora said, "Our operating strengths and strategic investments are expected to help yield breakout results from 2013 through 2013 in the forms of further margin expansion and accelerated cash flow generation."

32.     That same day, Hertz held a conference call for analysts and investors to discuss the Company's earnings release and operations – and in particular its strong fiscal 2013 guidance.   During the call, Defendants spoke positively about the Company's businesses and prospects.

33.     The price of Hertz common stock further increased on these positive statements.

34.     On March 4, 2013, these results were filed in the Company's Form 10-K for the period ended December 31, 2012.

35.     The Company's Form 10-K was signed by Defendants Frissora and Douglas, among others, and reaffirmed the Company's previously announced financial results in its Form 10-Q for the four quarters of 2012.

36.     On April 2, 2013, Hertz, through Defendants Frissora and Douglas and other members of senior management, presented a purported overview of Hertz's "strategies, operations and financial results to financial investors in connection with an investor

meeting."    During the presentation, Defendants provided very positive additional statements about the Company's business, finances, and prospects.

37.    The price of Hertz common stock further increased on these positive statements.

38.    On September 23, 2013, Hertz announced that Defendant Douglas had resigned from her position as Senior Executive Vice President and Chief Financial Officer effective October 1, 2013.   Though this was reported to be a resignation by Defendant Douglas "for personal reasons," Hertz announced on September 27, 2013 that Defendant Douglas was receiving a very lucrative severance package and payment in lieu of "outplacement services."

39.    On March 18, 2014, Hertz issued a press release announcing its financial results for fourth quarter and fiscal 2013, the quarter ended December 31, 2013, and Hertz's fiscal 2014 guidance.   The press release entitled "Hertz Reports Fourth Quarter and Full Year 2013 Results," emphasized that the Company had enjoyed record worldwide revenues for the fourth quarter of $2,556.3 million, up 10.2% over the prior year period.

40.    The release also quoted Defendant Frissora stating, in pertinent part, that "2013 was another record-setting year for Hertz on both revenues and profits.   We achieved a fourth consecutive year of 20%+ adjusted pre-tax income and EPS growth in 2013, on revenues which increased 19.4%."

41.    That same day, Hertz held a conference call for analysts and investors to discuss the Company's earnings release and its strong fiscal 2014 guidance.   During the call, Defendants spoke positively about the Company's businesses and prospects.

42.     On March 19, 2014, these results were filed in the Company's Form 10-K for the period ended December 31, 2013.

43.     The Company's Form 10-K was signed by Defendant Frissora and Kennedy, among others, and reaffirmed the Company's previously announced financial results in its Form 10-Q for the four quarters of 2013.

44.     The Company's Form 10-Q and Form 10-K submissions each contained required Sarbanes-Oxley certifications, signed by Defendant Frissora and either Defendant Kennedy or Douglas depending upon the date of filing.  In each instance, the Individual Defendants certified, in pertinent part, that:

a.      they had reviewed the reports;

b.      the reports did not contain any untrue statement of a material fact;

c.      the reports were not misleading with respect to the period covered;

d.      the financial statements, and other financial information included in the reports, fairly presented in all material respects the financial condition, results of operations and cash flows of Hertz for the periods presented in the report;

e.      they and Hertz's other certifying officer(s) were responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-l 5(f)) for the registrant and have:

f.      they had designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under their supervision, to ensure that material information relating to Hertz, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

g.      they had designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial

statements for external purposes in accordance with generally accepted accounting principles;

h.      they had evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

i.      they had disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting.

45.     They further disclosed to the Company's auditor PricewaterhouseCoopers LLP and the Audit Committee of the Board of Directors (or persons performing the equivalent functions):

a.      All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b.      Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

46.     The statements contained in the filings and in the Company's related press releases and public announcements referenced in Paragraphs 23-45 were materially false and/or misleading when made because Defendants failed to disclose or indicate the following: (i) that the Company had accounting errors; (ii) that, as a result, the Company's revenue and financial results were overstated; (iii) that, as such, the Company's financial statements were not prepared in accordance with GAAP; (iv) that the Company lacked adequate internal and financial controls; and (v) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

47.     The market for Hertz common stock was open, well-developed and efficient at all relevant times.   As a result, of these false and misleading statements and failures to disclose, Hertz common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Hertz common stock relying upon the integrity of the market price of Hertz common stock and market information relating to Hertz, and have been damaged thereby.

48.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Hertz common stock by publicly issuing false and misleading statements.    Said statements were materially false and misleading in that they misrepresented the truth about the Company.

49.     At all relevant times, the material misrepresentations directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Hertz's financials.  These material misstatements had the cause and effect of creating in the market an unrealistically positive assessment of Hertz and its business, prospects, and operations, thus causing the price of Hertz common stock to be overvalued and artificially inflated at all relevant times.   Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing Hertz common stock at artificially inflated prices, thus causing the damages complained of herein.   When the accounting failures were revealed to the market, the price of Hertz stock declined dramatically, causing loss to Plaintiff and the other members of the Class.

50.     Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.   As set forth elsewhere in detail, Defendants, by virtue of their control over and/or receipt of the true facts regarding Hertz participated in the fraudulent scheme alleged herein.

<div align="center">

**Applicability of Presumption of Reliance:**
**Fraud on the Market Doctrine**

</div>

51.     At all relevant times, the market for Hertz common stock was an efficient market for the following reasons, among others:

a.     Hertz stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

b.     The Company had more than four hundred million shares issued and outstanding during the Class Period.   During the Class Period, millions of shares of Hertz stock were traded on a daily basis, demonstrating a very active and broad market for Hertz stock and permitting a very strong presumption of an efficient market;

c.     Hertz purported that it was qualified to file a less comprehensive Form S-3 registration statement with the SEC that is reserved, by definition, to well-established and largely capitalized issuers for whom less scrutiny is required;

d.     As a regulated issuer, Hertz filed periodic public reports with the SEC and the NYSE;

e.     Hertz regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

<div align="center">14</div>

      f.     Hertz was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

52.     As a result of the foregoing, the market for Hertz common stock promptly digested current information regarding Hertz from all publicly available sources and reflected such information in the price of Hertz common stock. Under these circumstances, all purchasers of Hertz common stock during the Class Period suffered similar injury through their purchase of Hertz common stock at artificially inflated prices and a presumption of reliance applies.

## Disclosures at the End of the Class Period

53.     On May 13, 2014, foreshadowing the Form 8-K that would ultimately be issued in June 2014, Hertz revealed in its Form NT 10-Q that it was unable to timely file its Quarterly Report on Form 10-Q for the period ended March 31, 2014 because additional work was required to complete the closing procedures associated with the first quarter primarily related to evaluating the Company's conclusions regarding the capitalization and timing of depreciation for certain non-fleet expenditures in prior periods.

54.     In that same Form NT 10-Q Hertz revealed that:

During the course of its preparation of the Quarterly Report, the Company identified certain errors relating to prior periods which may require it to restate its previously issued financial statements for 2011. The Company does not believe that the adjustments to the 2013 and 2012 periods are material and does not expect that these errors will require the Company to restate its previously issued financial statements for those two years.

Management is continuing to review these matters to determine if it needs to make any changes to its internal control over financial reporting and disclosure controls and procedures. The Company will consider the effect of these errors on its prior conclusions regarding the Company's internal control over financial reporting and disclosure controls and procedures.

55.     After reporting quarter after quarter of purportedly "record" financial results during the Class Period, on June 6, 2014, Hertz shocked the market by disclosing in a filing with the SEC on Form 8-K that it must restate *three years* of financial statements due to varying accounting issues.  Therein, the Company, in relevant part, stated:

**ITEM 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

On May 13, 2014, each of Hertz Global Holdings, Inc. and The Hertz Corporation (collectively referred to herein as "Hertz" or the "Company") delayed the filing of its Form 10-Q for the period ended March 31, 2014 (the "First Quarter 10-Q").  During the preparation of the First Quarter 10-Q, errors were identified relating to Hertz's conclusions regarding the capitalization and timing of depreciation for certain non-fleet assets, allowances for doubtful accounts in Brazil, as well as other items. Hertz continued its review and recently identified additional errors related to allowances for uncollectible amounts with respect to renter obligations for damaged vehicles and restoration obligations at the end of facility leases.

The Audit Committee of the Board of Directors has consulted with management and analyzed the adjustments. The Audit Committee has concluded that the financial statements for 2011 should no longer be relied upon, and Hertz must restate them. Hertz also needs to correct the 2012 and 2013 financial statements to reflect these errors. However, because of the above mentioned errors, the Audit Committee has directed the Company to conduct a thorough review of the financial records for fiscal years 2011, 2012 and 2013, and this review may require Hertz to make further adjustments to the 2012 and 2013 financial statements. If these further adjustments to the 2012 and 2013 financial statements are determined to be material adjustments individually or in the aggregate. Hertz will need to also restate and withdraw reliance on those financial statements. Hertz will make a decision on 2012 and 2013 financial statements after the work described in Item 7.01 below is completed.

The financial statements for 2011 were most recently included in the Form 10-K for the year ended December 31, 2013 (the "10-K"). As soon as practicable, Hertz expects to amend the 10-K to correct the errors identified and related disclosures.

Hertz will file the First Quarter Form 10-Q, and issue the first quarter earnings release, at the same time it files the 10-K amendment. Consequently, the Company will not hold the conference call scheduled for June 9, 2014.

The chairman of the Audit Committee of the Board of Directors has discussed this matter with PricewaterhouseCoopers LLP, the independent registered public accounting firm for Hertz.

In light of the above, management, in consultation with the Audit Committee, has determined that at least one material weakness existed in Hertz's internal control over financial reporting and that disclosure controls and procedures were ineffective at December 31, 2013. Hertz intends to amend its Management's Report on Internal Control Over Financial Reporting and Disclosure Controls and Procedures and expects to receive an adverse opinion on the internal control over financial reporting as of December 31, 2013 from PricewaterhouseCoopers LLP.

Hertz is in the process of implementing new procedures and controls, and strengthening the accounting and finance departments through the addition of new personnel. Leading this process is Thomas (Tom) C. Kennedy, who was appointed Senior Executive Vice President and Chief Financial Officer of the Company, effective December 9, 2013. He is being assisted by the Company's new Chief Accounting Officer (CAO), Robin Kramer, who was hired in mid-May, and its new Vice President of SOX/Compliance, Randy Walford, who was hired in late April. Ms. Kramer comes to the Company with over 25 years of experience in both public accounting and as CAO for another Fortune 500 company. Mr. Walford comes to Hertz with over 13 years of experience in public accounting. The Company also recently expanded its accounting and finance departments with additional key new personnel to further strengthen the technical and managerial expertise in these departments.

56.     The Audit Committee has determined that at least one material weakness existed in Hertz's internal control over financial reporting and that disclosure controls and procedures were ineffective at December 31, 2013.

57.     Articles considering the impact of the financial misstatements suggest that adjustments for doubtful accounts in Brazil alone may reduce earnings during fiscal year 2011 by as much as $174 million.

58.     Moreover, Hertz has acknowledged in its June 2014 Form 8-K filing that the Company's first quarter results are likely to be below market estimates because of costs related to the accounting review.

59.     Further, the accounting review and related irregularities has created uncertainty in the market concerning the timing of Hertz's planned "spin-off" of its Equipment Rental segment.

### Hertz's Violation of GAAP Rules in Its Financial Statements Filed with the SEC

60.     These financial statements and the statements about the Company's financial results were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper recording of revenue, in violation of GAAP rules.

61.     GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time.  Regulation S-X (17 C.F.R. § 210.4-01(a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate.  Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. §210.10-01(a).

62.     The fact that Hertz announced that its financial statements will need to be restated, and informed investors that these financial statements should not be relied upon is

an admission that they were false and misleading when originally issued (APB No.20, 7-13; SFAS No. 154, 25).

63.     Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

a.     The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, 10);

b.     The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, 34);

c.     The principle that "financial reporting should provide information about the economic resources of Hertz, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1,40);

d.     The principle that "financial reporting should provide information about Hertz's financial performance during a period" was violated (FASB Statement of Concepts No. 1,42);

e.     The principle that "financial reporting should provide information about how management of Hertz has discharged its stewardship responsibility to owners (stockholders) for the use of Hertz resources entrusted to it" was violated (FASB Statement of Concepts No. 1, 50);

f.     The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, 5859);

g.     The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, 79); and

h.     The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated (FASB Statement of Concepts No. 2, 95).

64.     The adverse information concealed by Defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. §229.303).

### No Safe Harbor

65.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Hertz who knew that those statements were false when made.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Advanced securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times,

members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

67.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Hertz's securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

68.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

69.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

70.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

     a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

     b.     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Hertz;

     c.     whether the Individual Defendants caused Hertz to issue false and misleading financial statements during the Class Period;

d.      whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

e.      whether the prices of Hertz securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

f.      whether the members of the Class have sustained damages and, if so, what is.

71.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.   There will be no difficulty in the management of this action as a Class action.

72.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.      the omissions and misrepresentations were material;

c.      Hertz's securities are traded in an efficient market;

d.      the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

e.      the Company traded on the NYSE and was covered by multiple analysts;

f.      the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

g.      Plaintiff and members of the Class purchased, acquired and/or sold Hertz securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

73.     Based upon the foregoing. Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

74.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah* v. *United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

75.     Plaintiff repeats the allegations set forth above as if fully set forth herein.

76.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

77.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Hertz's securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Hertz securities and

23

options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

78.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Hertz's securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Hertz finances and business prospects.

79.    By virtue of their positions at Hertz, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

80.    Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Hertz securities from their personal portfolios.

81.    Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior executives of Hertz, the Individual Defendants had knowledge of the details of Hertz's internal affairs.

82.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Hertz.  As officers of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Hertz businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Hertz securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Hertz business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Hertz securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

83.    During the Class Period, Hertz securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Hertz securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not

have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Hertz securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Hertz securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

84.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

85.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**Violations of Section 20(a) of the Exchange Act**
**Against The Individual Defendants**

86.     Plaintiff repeats the allegations set forth above as if fully set forth herein.

87.     During the Class Period, the Individual Defendants participated in the operation and management of Hertz, and conducted and participated, directly and indirectly, in the conduct of Hertz's business affairs.  Because of their senior positions, they knew the adverse non-public information about Hertz's misstatement of income and expenses and false financial statements.

88.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Hertz's financial condition and results of operations, and to correct promptly any public statements issued by Hertz that had become materially false or misleading.

89.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Hertz disseminated in the marketplace during the Class Period concerning Hertz's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Hertz to engage in the wrongful acts complained of herein.   The Individual Defendants, therefore, were "controlling persons" of Hertz within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Hertz securities.

90.     Each of the Individual Defendants, therefore, acted as a controlling person of Hertz.  By reason of their senior positions, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Hertz to engage in the unlawful acts and conduct complained of herein.   Each of the Individual Defendants exercised control over the general operations of Hertz and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

91.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Hertz.

WHEREFORE, Plaintiff demands judgment as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.     Awarding rescission or a rescissory measure of damages; and

E.     Awarding such equitable/injunctive or other relief as deemed appropriate by the Court.

<div style="margin-left:50%">

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
*Attorneys for Plaintiff*


By:   /s/ James E. Cecchi
         JAMES E. CECCHI

</div>

Dated:  June 13, 2014

28

## **JURY DEMAND**

Plaintiff demands a trial by jury as to all issues so triable.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
*Attorneys for Plaintiff*


By:___/s/ James E. Cecchi_____
    JAMES E. CECCHI

Dated:  June 13, 2014